# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: BRUCE S. SMITH, M.D., <br><br>     Defendant-Appellant, <br><br> v. <br><br> TRINA TIDWELL, <br><br>     Plaintiff-Appellee, <br><br> ──────────────────────── <br><br> IN RE: BRUCE S. SMITH, M.D., <br><br>     Defendant-Appellant, <br><br> v. <br><br> SANDRA STERLING-AHLLA, <br><br>     Plaintiff-Appellee, | Case No. 08 C 46 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This is an appeal by the Debtor-Appellant Bruce S. Smith of the decision of the Bankruptcy Court to Vacate a Prior Discharge in Bankruptcy of Appellee's claims and to allow their state court claims to proceed.

### I.  BACKGROUND INFORMATION

On September 26, 2005, Bruce S. Smith (hereinafter, "Smith" or "Appellant"), the Appellant, filed a Chapter 7 bankruptcy case which resulted in a discharge order entered on January 17, 2006. Prior to the bankruptcy filing, the two Appellees, Sandra Sterling-Ahlla (hereinafter, "Sterling-Alla") and Trina Tidwell

(hereinafter, "Tidwell") (collectively, "Appellees") had filed separate suits against Smith in state court, each alleging the intentional tort of sexual assault. While Sterling-Ahlla's and Tidewell's suits were identified in the Debtor's Statement of Financial Affairs on the Bankruptcy Petition, their claims were not listed on Schedule F, the List of Unsecured Creditors, so neither received notice from the Clerk of the Bankruptcy Court of the filing of the bankruptcy petition. The first indication that Appellees received that there was a bankruptcy on file was as a result of motions filed by Smith's state court attorneys on December 23, 2005, seeking to have the state cases transferred to the state court's bankruptcy calender. Although the Bankruptcy Court had issued the usual automatic stay on September 27, 2006, Smith had made no attempt to enforce it or otherwise call it to Appellees' attention until the December 23 motion. The motion itself provided no information as to when the petition had been filed, when or whether there had been a creditors' meeting, or whether a deadline for objecting to discharge or dischargeability had been set. Under bankruptcy rules a debtor has 60 days from the conclusion of the Creditor's meeting to object to discharge or dischargeability. The meeting of creditors had, in fact, been held on November 8, 2005, without notice to Appellees, and resulted in a "no asset report," which meant that the deadline for objecting was January 8, 2006.

At the trial before the bankruptcy judge, Smith testified that his malpractice insurance carrier was providing a defense to the state suits under a reservation of rights without a commitment to pay any judgment that might be entered against him. He further testified that he had no intent to mislead Appellees and did not understand the difference between Schedule F and the Statement of Financial Affairs. However, he had filed a previous Chapter 7 petition in 2004 that had been dismissed on grounds of "substantial abuse." In the dismissed petition, Appellees had been listed on the Schedule F and had duly received notice of the filing of the petition. Smith's bankruptcy attorney, who prepared the petition, was with a firm that specialized in bankruptcy cases and was knowledgeable and experienced in Chapter 7 cases. He stated that the omission of Appellees' claims was his innocent mistake attributable to his heavy workload in anticipation of the Bankruptcy amendments that were to take effect in October 2005.

Appellees' attorney testified that he was out of the office on holiday at the time the state court motion to transfer was filed and did not receive actual notice until January 3, 2006. Appellees' attorney was not informed about the discharge deadline and had no way to figure it out without checking with the Bankruptcy Clerk's office to find out when the petitions had been filed and when the Creditors' meeting had been held.

On December 20, 2006, each Appellee filed motions in the bankruptcy case to allow their state court cases to proceed. On January 8, 2007, Appellees sought leave to file Adversary proceedings. The Bankruptcy Court consolidated the motions. The Appellees allege, first, that Smith committed intentional torts against them and should be exempt from discharge pursuant to 11 U.S.C. § 523(A)(6); second, that they did not receive notice in reasonable time to object to discharge pursuant to 11 U.S.C. § 523(c); and 11 U.S.C. § 727(D)(1); and, third, failing to list them in Schedule F was motivated by fraud. Smith defends on the ground that Appellees missed the deadline for objecting to discharge and dischargeability and denies that he intended to defraud Appellees.

The Bankruptcy Court held a trial and made Findings of Fact and Conclusions of Law, specifically that Smith intentionally filed a false bankruptcy petition and was guilty of fraud. The Bankruptcy Court also found that the actual notice was too late and unreasonably short to satisfy the due process rights of the Appellees. He therefore ruled that since the state cases were not liquidated, Appellees could proceed in state court and that Appellees' pending motions to seek dischargeability would be held in abeyance pending resolution of the state cases.

## II. DISCUSSION

On appeal to a district court the bankruptcy court's findings of fact, whether based on documentary evidence or oral testimony, shall not be set aside unless clearly erroneous and due regard shall be given where, as here, the bankruptcy judge had the opportunity to judge the credibility of the witnesses. *Federal Rules of Bankruptcy Procedure*, Rule 8013; *In re O'Hearn*, 339 F.3d 559, 564 (7th Cir., 2003). Here the court found that Smith had intentionally omitted scheduling Appellees, for the purpose of obtaining discharge of a debt that quite possibly was non-dischargeable under Section 523 and which would not be honored by his malpractice insurance carrier. The court also found that Smith had the opportunity to and did review his petition prior to filing. The judge also believed that filing of the 2004 petition that was dismissed for abuse added to the evidence of fraud. These factual findings were based on the bankruptcy judge's observations of Smith's testimony at the trial and are not clearly erroneous. Since the evidence disclosed that Smith had lost his job, undoubtedly as a result of the alleged intentional tort, the reason for filing the bankruptcy petition must have been, at least in part, to avoid personal liability to Appellees. The Court therefore affirms the Bankruptcy Judge's finding of fraud.

Even if the Court did believe that the above findings of fraud were clearly erroneous, the bankruptcy judge's additional

conclusion as to lack of due process is compelling. Smith's bankruptcy lawyer never did notify Appellees of the filing of the bankruptcy petition. It was Smith's state court attorneys, defending him under a reservation of rights, and not his bankruptcy lawyers, that notified Appellees. It is important to note that they waited almost three months after the entry of the stay order to notify the state court and Appellees' state court attorney of the stay. In addition, the state court attorneys did not disclose to Appellees the date and result of the Creditor's meeting so they would have a chance of computing the deadline for objecting to discharge or dischargeability.

Reasonable notice has been defined by the Supreme Court as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). An important consideration is whether the inadequacy of notice prejudiced the creditor or, stated another way, whether the actual notice that the creditor received, gave the creditor sufficient time to take meaningful action. *People of the State of Ill. ex rel. Hartigan v. Peters*, 871 F.2d 1336, 1340 (7th Cir., 1989). Here Appellees received notice of the automatic stay two days before Christmas. Normally the automatic stay is entered at the time the petition is filed. Christmas and New Years are normally

a period of down time for lawyers and the attorneys representing plaintiffs in tort cases are not normally cognizant of the intricacies of bankruptcy deadlines.  Thus the facts here are more compelling in finding a due process violation then those present *In re Walker*, 149 B.R. 511 (N.D. Ill., 1992).  The Court therefore agrees with the Bankruptcy Judge that imposing the January 17, 2006 deadline for objecting to discharge or dischargeability would violate the due process rights of the Appellees.

Smith is not without recourse.  He still has two more bites at the apple.  He, of course, can defend the state court cases on the merits and if he wins he will owe Appellees nothing.  If he loses the state court cases and judgments are entered against him in favor of the Appellees, he has the right to object to making the debts non dischargeable.

### III.  CONCLUSION

For the reasons stated herein, the Court therefore affirms the decision of the Bankruptcy Court in all respects.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated:     August 27, 2008